IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN J. BATES,<br><br>                     Petitioner,<br><br>     vs.<br><br>SCOTT R. FRAKES,<br><br>                   Respondent. | **8:18CV322**<br><br><br>**ORDER** |

This matter is before the court on Petitioner Kevin J. Bates' ("Petitioner" or "Bates") Petition for Writ of Habeas Corpus. (Filing No. 1.) For the reasons that follow, Bates' habeas petition is denied and dismissed with prejudice.

## I.  CLAIMS

Summarized and condensed, and as set forth in the court's initial review order (filing no. 7), Bates asserted the following claims that were potentially cognizable in this court:

Claim One:    Bates was denied the constitutional right to a fair trial because the state district court committed plain error by permitting Lopez-Bravo to invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury.

Claim Two:    Bates was denied effective assistance of counsel because trial counsel (1) failed to ask for a continuance to obtain a translation of the Spanish language text messages between Callahan and Lopez-Bravo and (2) failed to confront and cross-examine Callahan and Lopez-Bravo concerning their motives to fabricate, any understandings or agreements as to any present or future prosecution(s), or threats made by law enforcement in exchange for their testimony during the course of trial.

Claim Three:   Bates was denied effective assistance of counsel because appellate counsel failed to raise on direct appeal the following

claims of ineffective assistance of trial counsel: (1) the allegations in Claim Two, subpart (1), supra; (2) the allegations in Claim Two, subpart (2), supra; (3) trial counsel ceased cross-examination of Lopez-Bravo upon his Fifth Amendment invocation; (4) trial counsel failed to object to, move to strike testimony, move for curative instruction, move to dismiss charges, and preserve for appellate review the violation of due process when the prosecutor knowingly presented false testimony of Callahan and Lopez-Bravo; (5) trial counsel failed to discuss with Bates and present a defense that witness Callahan suffered drug-induced hallucinations and perceptual distortions and failed to consult with or call an expert witness to describe the effects of drug interactions; and (6) trial counsel failed to object to the form of jury instructions and request a jury instruction which specifically instructed the jury that intent is a material element of assault in the second degree and third degree domestic assault.

([Filing No. 7 at CM/ECF pp. 1-2](#) (non-substantive edits made for clarity).)

## II. BACKGROUND

### A. Conviction and Sentence

The court states the facts as they were recited by the Nebraska Court of Appeals in *State v. Bates*, No. A-14-1081, 2015 WL 7261034 (Neb. Ct. App. Nov. 17, 2015) (unpublished). ([Filing No. 11-1](#).) *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

On February 8, 2014, Melissa Callahan, Bates' then girlfriend, went to visit Bates, who was working at his parents' farm. Bates entered Callahan's vehicle and an argument ensued. Callahan claims they argued because she asked him to close the door because she was cold; Bates says he became upset when he noticed "track marks" on Callahan's arm, which he assumed meant she was using methamphetamine (meth) again. Callahan also claims that Bates assaulted her in the vehicle, which Bates denies.

2

Bates and Callahan were sitting in a vehicle in Bates' parents' driveway when Callahan's friend, Eswin Lopez-Bravo, arrived. Callahan testified at trial that Bates exited the vehicle and approached Lopez-Bravo's car while she waited. She said the men talked briefly and then Bates began punching Lopez-Bravo. Bates, however, claimed that Callahan got out of the vehicle to talk to Lopez–Bravo while he stayed behind. Bates said Callahan and Lopez-Bravo started arguing over what he thought was money. According to Bates, Lopez-Bravo grabbed Callahan, so Bates got out of the vehicle to intervene. Bates saw what he thought was a bag of meth in Lopez-Bravo's hand. Bates claimed that Lopez-Bravo then hit him on the side of the head, so Bates swung back and punched him three times. Bates also punched out the window of Lopez-Bravo's vehicle.

Prior to trial, the State filed a motion in limine asking the court to prohibit Bates from offering testimony or evidence concerning the use or possession of illegal drugs by Callahan or Lopez-Bravo. At a hearing on the motion, Bates argued that the ability to refer to the use of meth was necessary because his theory was that the incident on February 8, 2014 was a drug deal or collection of money that went wrong. He claimed that the relationship between Callahan and Lopez-Bravo was based almost completely on the use of meth, and they admitted at their depositions to using meth together. The district court granted the motion in part, ruling that Bates was prohibited from inquiring into Callahan's and Lopez-Bravo's prior use of drugs; however, he was not forbidden from adducing evidence that at the time of the occurrences either witness was in the possession of drugs as observed by a witness.

At trial, the State called Lopez-Bravo as a witness. Immediately upon his taking the stand and providing his name, Bates asked that the court advise Lopez-Bravo of his

Fifth Amendment right against self-incrimination. The court declined to do so at the time, indicating that it would wait to do so until the issue was raised by a question. Lopez-Bravo was then questioned by the State and answered all of the questions posed to him on direct examination. The State did not inquire into any meth use by Lopez-Bravo.

During cross-examination, however, Bates began questioning Lopez-Bravo about meth. Lopez-Bravo denied going to Bates' parents' residence to deliver drugs to Callahan and denied hiding drugs on the property. Lopez-Bravo admitted that he was under the influence of meth on February 8, 2014 and had smoked meth 3 days before trial. Bates' counsel then asked Lopez-Bravo who he smoked meth with 3 days prior, and the court interjected and advised Lopez-Bravo of his Fifth Amendment right to remain silent and avoid self-incrimination. The court then sustained the State's relevance objection to the question. Bates continued cross-examining Lopez-Bravo on other topics and then asked if he deals or sells meth. The court again advised Lopez-Bravo that if he answers the question, he may be providing information to the State that could be used to prosecute him and that he has a right to remain silent. As a result, Lopez-Bravo invoked his right to remain silent. Bates then stated that he had no further questions for the witness.

The jury ultimately found Bates guilty of second degree assault, third degree domestic assault, and criminal mischief.[1] The court found that the domestic assault was a second offense and that Bates was a habitual criminal. Bates was sentenced to consecutive sentences of 18 to 20 years, 20 months to 60 months, and 90 days.

---

[1] The jury acquitted Bates of strangulation, false imprisonment, and terroristic threats. (Filing No. 11-12 at CM/ECF pp. 142-44, 148.)

## B. Direct Appeal

Bates appealed only his conviction and sentence for second degree assault aggravated upon the habitual criminal count to the Nebraska Court of Appeals and was represented by different counsel than at trial. (Filing No. 11-1.) Bates argued that (1) the state district court committed plain error by permitting Lopez-Bravo to invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury and (2) he received ineffective assistance of counsel when counsel failed to move to strike Lopez-Bravo's testimony. (*Id.* at CM/ECF pp. 3-6; Filing No. 11-5.) The Nebraska Court of Appeals agreed that the district court erred in allowing Lopez-Bravo to invoke his right to remain silent in the presence of the jury but concluded that such error was harmless beyond a reasonable doubt. (Filing No. 11-1 at CM/ECF pp. 3-5.) The court also found no merit to the ineffective assistance of counsel claim. (*Id.* at CM/ECF p. 5.) Therefore, the court affirmed Bates' conviction and sentence. (*Id.* at CM/ECF p. 6.)

Bates filed a petition for further review with the Nebraska Supreme Court. (Filing No. 11-3 at CM/ECF p. 3; Filing No. 11-7.) He asserted that the "Nebraska Court of Appeals erred in finding the trial court's error harmless as any negative inference to be drawn from the witness's invocation could not cure the constitutional violation caused by the witness's effective termination of Confrontation and Cross-examination." (Filing No. 11-7 at CM/ECF p. 3.) The Nebraska Supreme Court denied Bates' petition for further review on January 13, 2016, and issued its mandate on January 29, 2016. (Filing No. 11-3 at CM/ECF p. 3.)

## C. Postconviction Action

Bates filed a pro se verified motion for postconviction relief on September 1, 2016. ([Filing No. 11-13 at CM/ECF pp. 20-33.](#)) Bates alleged that his trial counsel was ineffective in six respects: (1) failing to ask for a continuance to obtain a translation of the Spanish language text messages between Callahan and Lopez-Bravo; (2) ceasing cross-examination of Lopez-Bravo upon his Fifth Amendment invocation; (3) failing to confront and cross-examine Callahan and Lopez-Bravo concerning their motives to fabricate, any understandings or agreement as to any present or future prosecution(s), or threats made by law enforcement in exchange for their testimony during the course of trial; (4) failing to object to and move to strike the testimony of witnesses, move for a curative instruction, move to dismiss charges, and preserve for appellate review violations of his due process rights when "the prosecutor knowingly presented false testimony of Callahan and Lopez-Bravo"; (5) failing to discuss with Bates and present the defense that Callahan suffered drug-induced hallucinations and perceptual distortions and for failing to consult with or call an expert witness or psychiatrist to describe the effects; and (6) failing to object to the form of the jury instructions and request a jury instruction which specifically instructed the jury that intent is a material element of second degree assault and third degree domestic assault  (*Id.* at CM/ECF pp. 23-31.) Bates also alleged that his appellate counsel was ineffective in failing to raise the six ineffective assistance of trial counsel claims on direct appeal. (*Id.* at CM/ECF pp. 31-32.) In a written order entered January 17, 2017, the state district court denied postconviction relief on all grounds without an evidentiary hearing. (*Id.* at CM/ECF pp. 36-54.)

Bates appealed to the Nebraska Court of Appeals. (Filing No. 11-2; Filing No. 11-8.) In addition to raising the same ineffective assistance of counsel claims that he raised in his postconviction motion, Bates asserted that the state district court erred in denying his request for an evidentiary hearing and committed plain error when submitting untranslated Spanish text messages into evidence and allowing them into the jury room during deliberations. (Filing No. 11-2 at CM/ECF pp. 2-10; Filing No. 11-8.) The Nebraska Court of Appeals concluded that all the ineffective assistance of trial counsel claims were procedurally barred because they could have been raised on direct appeal as he had different appellate counsel than trial counsel and there was no argument or evidence that he was not aware of trial counsel's alleged deficiencies at the time of direct appeal. (Filing No. 11-2 at CM/ECF p. 3.) The court further held that all the ineffective assistance of appellate counsel claims were without merit and, thus, they were properly denied without an evidentiary hearing. (Id. at CM/ECF pp. 3-10.) Finally, the court declined to address the plain error claim because he did not raise it in his postconviction motion. (Id. at CM/ECF p. 10.) Therefore, the Nebraska Court of Appeals affirmed the state district court's denial of postconviction relief. (Id.)

Bates filed a petition for further review with the Nebraska Supreme Court. (Filing No. 11-4.) Bates raised the same claims that he raised in the Nebraska Court of Appeals. (Filing No. 11-11.) The Nebraska Supreme Court denied Bates' petition for further review on June 11, 2018, and issued its mandate on June 26, 2018. (Filing No. 11-4 at CM/ECF pp. 2-3.)

**D. Habeas Petition**

Bates filed his Petition for Writ of Habeas Corpus in this court on July 9, 2018. (Filing No. 1.) In response to the Petition, Respondent filed an Answer (filing no. 16), a Brief (filing no. 19), and the relevant state court records (filing no. 11). Bates filed a brief (filing no. 21) in response to Respondent's Answer, and Respondent filed a reply brief (filing no. 22). This matter is fully submitted for disposition.

### III. OVERVIEW OF APPLICABLE LAW

Various strands of federal habeas law intertwine in this case. They are (1) exhaustion and procedural default; (2) the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court; and (3) the standard for evaluating a claim of ineffective assistance of counsel. The court elaborates upon those concepts next, so that it may apply them later in a summary fashion as it reviews Bates' claims.

**A. Exhaustion and Procedural Default**

As set forth in 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is

attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Also, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To invoke the actual innocence exception, a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Jennings v. United States*, 696 F.3d 759, 764-65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

## B. Nebraska Law Relevant to Procedural Default

Under Nebraska law, you don't get two bites of the postconviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, Nebraska has a statute of limitations for bringing postconviction actions that is similar to federal law. It reads:

> (4) A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:
>
> > (a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;
> >
> > (b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;
> >
> > (c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;
> >
> > (d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or
> >
> > (e) August 27, 2011.

Neb. Rev. Stat. § 29-3001(4) (West).

## C. Deferential Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due

state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* Indeed, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA [Antiterrorism and Effective Death Penalty Act] standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that federal courts must "undertake only a limited and deferential review of underlying state court decisions." *Id.* at 495 (citation omitted). When the last state court fails to provide the rationale for the decision, district courts must "look through the unexplained decision to the last related state court decision that does provide a relevant rationale," and "presume that the unexplained decision adopted the same

rationale." *Wilson v. Sellers*, ___ U.S. ___, ___, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted by a "showing that the unexplained [decision] relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

## D. The Especially Deferential *Strickland* Standard

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for offenders to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel

claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

*Strickland* applies equally to appellate counsel, and appellate counsel is entitled to the "benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (a "fairminded jurist" could have concluded that repetition of anonymous tip in state-court cocaine-possession trial did not establish that the uncontested facts it conveyed were submitted for their truth, in violation of the Confrontation Clause, or that petitioner was prejudiced by its admission into evidence, precluding federal habeas relief under Antiterrorism and Effective Death Penalty Act (AEDPA); Petitioner could not establish that Petitioner's appellate counsel was ineffective, as appellate counsel was entitled to the "benefit of the doubt").

## IV. DISCUSSION

### A. Claim One

Bates claims that he was denied the constitutional right to a fair trial because the state district court committed plain error by permitting Lopez-Bravo to invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury.

The Nebraska Court of Appeals considered this issue in a reasoned opinion on direct appeal. The court wrote:

Bates challenges the district court's decision to allow Lopez-Bravo to invoke his right against self-incrimination in the presence of the jury. He recognizes that because he failed to object at trial, we are limited to a review for plain error.

Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012). However, an appellate court may, at its option, notice plain error. *See id.* Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

The Nebraska Evidence Rules, contained in chapter 27 of the Nebraska Revised Statutes, as well as our case law interpreting those rules, direct trial courts to avoid a jury's exposure to a witness' claim of privilege whenever possible. *See State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015). Section 27-513(2) provides that "proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury." Absent extraordinary circumstances, trial courts should exercise their discretion to forbid parties from calling witnesses who, when called, will only invoke a privilege. *State v. Draper, supra.*

In the present case, the district court was made aware of the intent to question Lopez-Bravo regarding meth, and thus, it was aware that the witness may need to invoke his right against self-incrimination. Nevertheless, the court did not definitively determine, outside the jury's presence, whether he would invoke such right. Even after Lopez-Bravo took the stand at trial and was sworn in, the court declined to address the issue until it was raised during questioning. It would have been practicable to determine whether and to what extent Lopez-Bravo intended to remain silent outside the jury's presence. Because such a determination was not made, allowing the invocation of privilege in front of the jury violated § 27-513(2). The State agrees.

However, not all trial errors, even trial errors of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result. *State v. Draper, supra.* When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, influenced the outcome of the case. *Id.* It is only prejudicial error, that is, error which cannot be said to be harmless

beyond a reasonable doubt, which requires that a conviction be set aside. *Id*.

In *Draper*, the Supreme Court found error in allowing a witness to invoke her right to remain silent in the presence of the jury. In addressing whether the error was nevertheless harmless, the court adopted the analysis from *Namet v. United States*, 373 U.S. 179, 83 S. Ct. 1151, 10 L. Ed. 2d 278 (1963), which described 2 circumstances when the prosecutor's calling a witness to the stand with the knowledge that the witness would invoke the privilege against self-incrimination constituted reversible error. The first category was based upon prosecutorial misconduct and involved situations when the prosecution makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. That is not the case here. There is no evidence the State was attempting to build its case out of inferences from use of the privilege. The State called Lopez-Bravo to the stand in order to ascertain his non-privileged testimony as a fact witness and victim of Bates' assault.

The second category involves cases in which inferences from a witness' refusal to answer added critical weight to the State's case in a form not subject to cross-examination. *See State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015). In addressing this prong, appellate courts are to consider the invocation of the privilege within the entire context of the case and other evidence presented to the jury. *See id*. Other factors to be considered are whether the State knew the witness would invoke the privilege, the number of questions that elicit an assertion of the privilege, whether the inferences are merely cumulative of other evidence, whether the inferences relate to central or collateral matters, whether either side attempted to draw adverse inferences in closing argument or at any other time during trial, and whether the jury was instructed not to draw an inference from the witness' refusal to testify. *Id*.

In the present case, Lopez-Bravo answered all of the questions asked of him on direct examination, and Bates was not prohibited from cross-examining him as to his testimony. The privilege was invoked on only one occasion during cross-examination when Bates' counsel asked Lopez-Bravo whether he deals or sells meth.

The purpose of § 27-513(2) is to prevent the jury from drawing an unfavorable inference from a witness' assertion of privilege. *See id*. The inference the jury could draw from Lopez-Bravo's invocation of his right to remain silent was that he is, in fact, a drug dealer, an inference that would tend to discredit him and work in Bates' favor. More importantly, this inference would support Bates' position that Lopez-Bravo and Callahan were arguing about drug money and the fight occurred because Bates was

defending Callahan and himself. Thus, the inference from Lopez-Bravo's refusal to answer that single question did not add "critical weight" to the State's case in a form not subject to cross-examination and was not prejudicial to Bates. Accordingly, we find that the error in allowing Lopez-Bravo to invoke his right to remain silent in the presence of the jury is harmless beyond a reasonable doubt.

Bates also asserts that allowing Lopez-Bravo to invoke his right to remain silent in the presence of the jury violated his Sixth Amendment right to confrontation and cross-examination. The Confrontation Clauses of U.S. Const. amend. VI and Neb. Const. art. I, § 11, guarantee the right of an accused in a criminal prosecution to be confronted with the witnesses against him or her. The purpose of the right of confrontation is primarily to guarantee a right for the accused to cross-examine witnesses against him or her. *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015).

The Nebraska Supreme Court has found these rights to be implicated when a question is posed to a witness that he refuses to answer, and his refusal implies the answer. The opposing party, however, is unable to cross-examine the witness as to that statement because he gave no testimony upon which a cross-examination could be based. *See State v. Draper, supra*. The danger is that a jury may properly infer the veracity of the statement without the opportunity for cross-examination. *Id.*

In the present action, the question at issue is whether Lopez-Bravo sold meth. The question was posed by Bates, the party now contending that he was denied his right to confront and cross-examine Lopez-Bravo because he invoked his right to remain silent. Bates could not have been prejudiced from Lopez-Bravo's refusal to answer because the inference would be that he did, indeed, sell meth. Since this would support Bates' version of the incidents that led to the assault, no violation of his constitutional right exists. Furthermore, any alleged error was invited by Bates when he asked the question and a party cannot assert plain error which he invited. *See State v. Gutierrez*, 260 Neb. 1008, 620 N.W.2d 738 (2001).

(Filing No. 11-1 at CM/ECF pp. 3-5.)

First, evidentiary issues are traditionally not cognizable in a habeas corpus proceeding because they raise questions of state law. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Accordingly, to the extent that Claim One of Bates' petition challenges a

decision based on Neb. Rev. Stat. § 27-513(2) and the appellate court's harmless error analysis, it is not cognizable in a habeas proceeding before this court.

The court acknowledges that the Nebraska Court of Appeals relied on *Namet v. United States*, 373 U.S. 179 (1963), in determining that the trial court evidentiary error was harmless beyond a reasonable doubt. In *Namet*, the Supreme Court considered a claim that a prosecutor's questioning of two witnesses concerning their gambling relationship with the defendant with the knowledge that they would invoke their Fifth Amendment right constituted reversible error. *Id.* at 180. The Supreme Court rejected the defendant's argument of "evidentiary trial error" and explicitly noted that "[n]o constitutional issues of any kind are presented." *Id.* at 185. Only in dicta did it consider what type of showing might be necessary to state a constitutional claim on this theory: (1) "prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege"; and (2) when "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Id.* at 186-87. Because *Namet* involved only evidentiary trial error and no constitutional question was presented, *id.* at 185, "*Namet* is 'off the table' for habeas purposes." *Johnson v. Lamas*, 850 F.3d 119, 138 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 975 (2018) (citing *Early v. Packer*, 537 U.S. 3, 10 (2002) (holding that petitioner's authorities, which did not "purport[ ] to interpret any provision of the Constitution," could not provide clearly established federal law within the meaning of § 2254)).

19

Two years after *Namet*, however, the Supreme Court articulated a limited circumstance when a Confrontation Clause violation is a viable constitutional claim. In *Douglas v. Alabama*, 380 U.S. 415 (1965), the Supreme Court held that *Namet*'s Confrontation Clause standard sets forth a constitutional claim. *Douglas*, 380 U.S. at 420. Under *Douglas*/*Namet*, calling a witness to testify knowing that he will invoke his Fifth Amendment rights would result in a constitutional violation if the "'inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.'" *Id.* (quoting *Namet*, 373 U.S. at 187).

Bates is not entitled to relief because the Nebraska Court of Appeals' decision is neither contrary to, nor an unreasonable application of, clearly established federal law under *Namet*/*Douglas*. The Nebraska Court of Appeals identified both *Namet* principles in its decision. (Filing No. 11-1 at CM/ECF p. 4.) As mentioned above, Bates can only seek relief under the second *Namet* principle under *Douglas*. Relief is only available if the state court identifies the wrong law, and that did not occur in this case. Indeed, the Nebraska Court of Appeals cited to *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015), which cites to, and sets forth, the *Namet*/*Douglas* standards. *See Draper*, 289 Neb. at 785-88, 857 N.W.2d at 341-43. Therefore, the court identified the correct federal standard.

The Nebraska Court of Appeals' decision also did not make an unreasonable application of the *Namet*/*Douglas* principle in Bates' case. The court properly recognized that Lopez-Bravos' invocation of his Fifth Amendment rights before the jury "did not add 'critical weight' to the State's case in a form not subject to cross-examination and was not

prejudicial to Bates." (Filing No. 11-1 at CM/ECF p. 4.) *See Douglas*, 380 U.S. at 420; *Namet*, 373 U.S. at 187. As the Nebraska Court of Appeals explained,

> the inference the jury could draw from Lopez-Bravo's invocation of his right to remain silent was that he is, in fact, a drug dealer, an inference that would tend to discredit him and work in Bates' favor. More importantly, this inference would support Bates' position that Lopez-Bravo and Callahan were arguing about drug money and the fight occurred because Bates was defending Callahan and himself.

> Bates could not have been prejudiced from Lopez-Bravo's refusal to answer because the inference would be that he did, indeed, sell meth. Since this would support Bates' version of the incidents that led to the assault, no violation of his constitutional right exists. . . .

(Filing No. 11-1 at CM/ECF pp. 4-5) The Nebraska Court of Appeals further pointed out that Bates was not prohibited from cross-examining Lopez-Bravo, and, in fact, the question whether Lopez-Bravo sold meth "was posed by Bates, the party now contending that he was denied his right to confront and cross-examine Lopez-Bravo because he invoked his right to remain silent." (*Id.*)

Nor is the Nebraska Court of Appeals' decision contrary to, or an unreasonable application of, clearly established federal law under *Davis v. Alaska*, 415 U.S. 308 (1974). A defendant has the right under the Sixth Amendment's Confrontation Clause to elicit enough facts about a witness' "possible biases, prejudices, or ulterior motives" to let the jury assess witness credibility. *Davis*, 415 U.S. at 316. "[T]he exposure of a witness' motivation in testifying is a proper and important feature of the constitutionally protected right of cross-examination." *Id.* at 316-17. "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited in engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could

appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis*, 415 U.S. at 318). Even so, this right is not unlimited: a defendant is guaranteed "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis added). The trial judge "retain[s] wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

Bates was not prohibited on cross-examination from exposing "to the jury the facts from which jurors . . . could appropriately draw inferences" about Lopez-Bravo's "possible biases, prejudices, or ulterior motives." *See Davis*, 415 U.S. at 316. Indeed, Lopez-Bravo admitted on cross-examination that he was under the influence of methamphetamine on the day of the incident and that he had smoked methamphetamine three days before trial. Although Lopez-Bravo denied that he went to Bates' parents' residence to deliver drugs to Callahan, his later refusal to answer on cross-examination indicated that he, indeed, was a drug dealer. Bates also asked Lopez-Bravo questions on cross-examination suggesting that he and Callahan ran behind the hay bales to hide drugs and that Lopez-Bravo, and not Bates, was the one who hit Callahan. (Filing No. 11-16 at CM/ECF pp. 17-32.) As such, Bates was not prohibited from exposing to the jury that Lopez-Bravo used and sold drugs, which was the basis for his claimed Sixth Amendment violation.

**B. Claim Two**

Next, Bates asserts that he was denied effective assistance of counsel because trial counsel (1) failed to ask for a continuance to obtain a translation of the Spanish language text messages between Callahan and Lopez-Bravo and (2) failed to confront and cross-examine Callahan and Lopez-Bravo concerning their motives to fabricate, any understandings or agreements as to any present or future prosecution(s), or threats made by law enforcement in exchange for their testimony during the course of trial. However, the Nebraska Court of Appeals did not reach the merits of these claims because Bates did not raise these claims on direct appeal. (Filing No. 11-2 at CM/ECF p. 3.) This decision was based on a Nebraska procedural rule. (*Id.* (citing *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017) (stating that claims of ineffective assistance of trial counsel are procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) the claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record)).) Therefore, Claim Two has been procedurally defaulted. *See Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009) ("Federal courts generally will not review claims that a state court has refused to consider because of the petitioner's failure to satisfy a state procedural requirement").

To overcome the procedural default, Bates must show cause for not presenting the claims on direct appeal and prejudice from the failure, or that he is actually innocent. *See Storey v. Roper*, 603 F.3d 507, 523 (8th Cir. 2010). For the reasons discussed below, Bates has not shown he was prejudiced by a failure to present the defaulted claims on direct appeal. Nor has Bates argued, much less established, that he is actually innocent.

## C. Claim Three

In Claim Three, Bates claims that he was denied effective assistance of counsel because appellate counsel failed to raise on direct appeal the following claims of ineffective assistance of trial counsel: (1) the allegations in Claim Two, subpart (1), supra; (2) the allegations in Claim Two, subpart (2), supra; (3) trial counsel ceased cross-examination of Lopez-Bravo upon his Fifth Amendment invocation; (4) trial counsel failed to object to, move to strike testimony, move for curative instruction, move to dismiss charges, and preserve for appellate review the violation of due process when the prosecutor knowingly presented false testimony of Callahan and Lopez-Bravo; (5) trial counsel failed to discuss with Bates and present a defense that witness Callahan suffered drug-induced hallucinations and perceptual distortions and failed to consult with or call an expert witness to describe the effects of drug interactions; and (6) trial counsel failed to object to the form of the jury instructions and request a jury instruction which specifically instructed the jury that intent is a material element of assault in the second degree and third degree domestic assault.

Before the Nebraska Court of Appeals addressed the merits of each claim, it set forth the proper legal standard under *Strickland*:

> A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *Id.* That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id.* Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id.* When a case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's

performance by focusing on whether trial counsel was ineffective under the *Strickland* test. *State v. Sellers, supra.* If trial counsel was not ineffective, then the defendant suffered no prejudice when appellate counsel failed to bring an ineffective assistance of trial counsel claim. *Id.*

([Filing No. 11-2 at CM/ECF p. 3.](#))

## 1. Translation of Text Messages

In Claim Three, subpart (1), Bates claims that appellate counsel rendered ineffective assistance by failing to raise on direct appeal that trial counsel was ineffective for failing to ask for a continuance to obtain a translation of the Spanish language text messages between Callahan and Lopez-Bravo.

The Nebraska Court of Appeals considered and rejected this argument in its order affirming the state district court's denial of postconviction relief. The court wrote:

> Bates first asserts that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective in failing to seek a continuance to obtain the translation of text messages from Spanish to English. The text messages depicted in exhibit 30, which was received into evidence at trial, were apparently exchanged between Callahan and Lopez-Bravo on February 8, 2014, prior to the incident involving Bates. The content of the text messages is a mixture of words in Spanish and English and appears to include short-hand or abbreviations as well.
>
> Bates claims that the content of the text messages was necessary to cross-examine Callahan and Lopez-Bravo and was critical to his defense theory that he was reasonably exercising his right to defend his family, his girlfriend, and himself from a "meth using and addicted stranger uninvited on his parents' property and present to sell drugs to his girlfriend." Bates suggests that the content of the text messages supports his theory that Lopez-Bravo and Callahan were arguing about money and Lopez-Bravo was at the farm to sell drugs to Callahan.
>
> Contrary to Bates' argument that translation was necessary to establish that Callahan and Lopez-Bravo were arguing about money, exhibit 30 contains an entry sent in English from Callahan's phone that reads "Why would I gve u the $ when kevin is gnna pay you in the a.m. [Spanish] bring it to u now." Lopez-Bravo responded, "you no u need, gimy this many [Spanish] don't fuck, call me any more y do t have nothing for you any more, y don't want

see u anymore." From this, the jury could have reasonably gleaned, without translation, that the parties were arguing and money was at issue. Additionally, Bates testified that he heard Callahan and Lopez-Bravo arguing about money at the farm before he intervened. Because sufficient evidence was offered to prove that Callahan and Lopez-Bravo were arguing about money, trial counsel was not ineffective for failing to ask for a translation to establish this fact.

Bates also claims translation was necessary to establish that Lopez-Bravo was at the farm to sell drugs to Callahan. But both Bates and Callahan testified at trial that Lopez-Bravo brought drugs with him when he came to the farm. Whether he was there to sell those drugs to Callahan does not establish that Bates acted in defense of her when assaulting Lopez-Bravo.

In support of his defense of others theory, Bates testified that when Lopez-Bravo arrived at his parents' farm on February 8, 2014, Callahan first approached Lopez-Bravo's vehicle and they began a verbal argument during which he heard the word "money." Bates claimed that the argument got louder and then he observed Lopez-Bravo grab Callahan "in the top area," which Bates believed to be her arms. He said that he then approached the altercation, grabbed Lopez-Bravo, and turned him around. It was then he observed methamphetamine (meth) in Lopez-Bravo's hand and Lopez-Bravo took a swing at him, catching Bates on the side of the head.

Callahan and Lopez-Bravo, on the other hand, both testified that it was Bates who first approached Lopez-Bravo's vehicle, opened the car door, and began hitting Lopez-Bravo. In convicting Bates of second degree assault, the jury necessarily determined that Bates was not acting in defense of Callahan when he assaulted Lopez-Bravo. Even if the translated messages would have supported Bates' theory that Lopez-Bravo and Callahan were arguing about money, and Lopez-Bravo was at the farm to sell drugs to Callahan, Bates has failed to prove that he was prejudiced by counsel's failure to request a continuance so the messages could be translated. Additional evidence supporting Bates' two assertions would have been cumulative and would not have resulted in a different outcome. We therefore conclude that appellate counsel was not ineffective in failing to raise this claim on direct appeal.

Bates also claims the failure to translate the exhibits violates article I, § 27, of the Nebraska constitution. This section states that "[t]he English language is hereby declared to be the official language of this state, and all official proceedings, records and publications shall be in such language, and the common school branches shall be taught in said language in public, private, denominational and parochial schools." Nothing in this section prohibits the

receipt of non-English exhibits into evidence, as they are neither official "proceedings, records, nor publications." We therefore reject this argument.

(Filing No. 11-2 at CM/ECF pp. 4-5.)

The court must grant substantial deference to the Nebraska Court of Appeals' decision on this issue. The Nebraska Court of Appeals reviewed all the evidence and determined, based on *Strickland*, that Bates was not prejudiced by trial counsel's failure to request a continuance so the messages could be translated. Bates did not establish that the Nebraska Court of Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

More to the point here, Bates cannot show that he was prejudiced by appellate counsel's failure to raise the argument on direct appeal. The Nebraska Court of Appeals considered and rejected the argument in the postconviction action. There is nothing in the record to suggest the result would have been different if the argument had been raised on direct appeal instead. Accordingly, Bates is not entitled to relief based on Claim Three, subpart (1), of the petition.

### 2. Cross-Examination of Callahan and Lopez-Bravo

Bates argues that appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel was ineffective for failing to confront and cross-examine Callahan and Lopez-Bravo concerning their motives to fabricate, any understandings or agreements as to any present or future prosecution(s), or threats made by law enforcement in exchange for their testimony during the course of trial.

The Nebraska Court of Appeals considered and rejected this argument in its order affirming the state district court's denial of postconviction relief. The court wrote:

> Bates next asserts that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective in failing to confront and cross-examine Callahan and Lopez-Bravo concerning their motives to fabricate, any understandings or agreements as to any present or future prosecution, or any threats made by law enforcement in exchange for their testimonies at trial. Bates claims that he was prejudiced by trial counsel's deficiencies because evidence of Callahan's and Lopez-Bravo's motives to testify against him would have wholly impeached their testimonies and resulted in acquittal by the jury.

> We first observe that Callahan and Lopez-Bravo appeared at trial under subpoena, and there was such concern that Callahan may not appear on the second day of trial to give her testimony, that she was sequestered in the custody of the sheriff with a female deputy staying with her overnight at a hotel. And photographs received into evidence depict injuries to both witnesses, with Bates admitting to assaulting Lopez-Bravo. Thus, any assertion that Callahan and Lopez-Bravo testified against Bates solely out of a desire to lie in order to get revenge on him in some form is not supported by the record.

> Additionally, assuming trial counsel knew or should have known of the extraneous information Bates cites in his motion for postconviction relief, we conclude that Bates was not prejudiced by trial counsel's failure to inquire into these matters during cross-examination. This argument centers on the credibility of Callahan and Lopez-Bravo. Our review of the record indicates that both witnesses were thoroughly cross-examined, questioned about drug use and criminal history, and confronted with inconsistencies in their testimonies. In acquitting Bates of charges of strangulation, false imprisonment, and terroristic threats with respect to Callahan, the jury obviously did not find Callahan's testimony on those issues to be credible, suggesting that trial counsel's cross-examination was at least somewhat effective. Thus, Bates has failed to show how any further impeachment of the witnesses would have changed the outcome of his trial. As a result, this claim is without merit.

(Filing No. 11-2 at CM/ECF p. 7.)

Bates did not rebut the Nebraska Court of Appeals' findings of fact on this issue, nor did he make any effort to do so. As stated previously in this order, the court must

grant substantial deference to the Nebraska Court of Appeals' findings of fact and conclusions of law. The Nebraska Court of Appeals reviewed all the evidence and determined, based on *Strickland*, that Bates was not prejudiced by trial counsel's failure to confront and cross-examine Callahan and Lopez-Bravo concerning their motives to fabricate, any understandings or agreements as to any present or future prosecution, or any threats made by law enforcement in exchange for their testimonies at trial. Bates did not argue, much less establish, that the Nebraska Court of Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

More to the point here, Bates was not prejudiced by his appellate counsel's failure to raise the argument on direct appeal. The Nebraska Court of Appeals considered and rejected the argument in the postconviction action. There is nothing to suggest the result would have been different if the argument had been raised on direct appeal instead. Accordingly, Bates is not entitled to relief based on Claim Three, subpart (2), of the petition.

### 3. Lopez-Bravo's Fifth Amendment Invocation

Bates argues that appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel was ineffective for ceasing cross-examination of Lopez-Bravo upon his Fifth Amendment invocation.

The Nebraska Court of Appeals considered and rejected this argument in its order affirming the state district court's denial of postconviction relief. The court wrote:

Bates next claims that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective in the manner in which he handled Lopez-Bravo's invocation of his Fifth Amendment rights. Specifically, Bates asserts that trial counsel should have asked the court to direct Lopez-Bravo to answer the question or requested sanctions upon the witness for refusing to answer the question. He also contends that trial counsel abandoned his cross-examination after Lopez-Bravo's Fifth Amendment invocation.

As the district court correctly observed, a defendant's right to present a defense is not absolute and does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self-incrimination. *See State v. Phillips*, 286 Neb. 974, 840 N.W.2d 500 (2013). The state and federal Constitutions provide that no person shall be compelled to give evidence against himself or herself of an incriminating nature. *State v. Phillips, supra.* While a witness may invoke the Fifth Amendment to avoid answering questions, the witness' assertion of the privilege does not by itself establish the risk of incrimination; instead, the court must make inquiry to determine itself whether answering the questions would raise Fifth Amendment concerns. *State v. Phillips, supra.* Because of the constitutional dimension of the privilege, when a court inquires into the propriety of an invocation of the Fifth Amendment privilege, the guarantee against compulsory self-incrimination must be accorded a liberal construction. *See State v. Phillips, supra.*

Here, the district court made the proper inquiry, and there is no argument that Lopez-Bravo's invocation of his right to remain silent was improper. At the outset of Lopez-Bravo's testimony, Bates' trial counsel asked that the court advise Lopez-Bravo of his Fifth Amendment right against self-incrimination. The court declined to do so at the time, indicating that it would wait to do so until the issue was raised by a question.

Lopez-Bravo answered all of the questions posed to him on direct examination by the State. During cross-examination, Bates began questioning Lopez-Bravo about meth. Lopez-Bravo admitted that he was under the influence of meth on February 8, 2014 and had smoked meth 3 days before trial. Bates' counsel then asked Lopez-Bravo with whom he had smoked meth 3 days prior, and the court interjected and advised Lopez-Bravo of his Fifth Amendment right to remain silent and avoid self-incrimination. The court then sustained the State's relevance objection to the question.

Bates continued cross-examining Lopez-Bravo on other topics and then asked if he deals or sells meth. The court again advised Lopez-Bravo that if he answers the question, he may be providing information to the State

that could be used to prosecute him and that he has a right to remain silent. As a result, Lopez-Bravo invoked his right to remain silent. Bates then stated that he had no further questions for the witness. The district court properly recognized that by Lopez-Bravo admitting to selling meth, he could be incriminating himself. This was the only question to which Lopez-Bravo invoked his right to remain silent. Because Lopez-Bravo properly invoked his constitutional right, the district court had no authority to sanction him for doing so.

Nor could the court direct Lopez-Bravo to answer the question. Trial courts in Nebraska do not have inherent authority to confer immunity. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). Neb. Rev. Stat. § 29-2011.02 (Reissue 2016) authorizes a grant of immunity to a witness solely upon the motion of the prosecuting attorney. *See*, *also*, *State v. Robinson, supra*. Thus, any request from Bates' trial counsel that the district court grant immunity to Lopez-Bravo and direct him to answer the question would have been unsuccessful. Trial counsel was therefore not ineffective in failing to make such a request because, as a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *See State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

Finally, Bates argues that trial counsel abandoned his cross-examination of Lopez-Bravo upon his Fifth Amendment invocation. He claims that trial counsel had a "total breakdown," was not prepared when cross-examination was interrupted by Lopez-Bravo invoking his Fifth Amendment rights, "froze" in the middle of trial, and had no further questions for the witness. Brief for appellant at 13. It is true that after Lopez-Bravo invoked his constitutional rights, trial counsel indicated that he had no further questions for the witness; however, the rest of Bates' allegations are unsupported by the record. Trial counsel was clearly aware of the potential that Lopez-Bravo may invoke his Fifth Amendment rights because trial counsel requested that the court inform Lopez-Bravo of his right to do so at the beginning of his testimony. Additionally, the parties discussed at a pretrial hearing whether questions regarding meth use or sale would be allowed during trial. Thus, there is no evidence to support a finding that trial counsel's performance was deficient because he was so stunned by Lopez-Bravo's invocation of his Fifth Amendment rights that he was unable to continue cross-examination. As a result, appellate counsel was not ineffective in failing to raise this claim on direct appeal.

(Filing No. 11-2 at CM/ECF pp. 5-6.)

Bates did not rebut the Nebraska Court of Appeals' findings of fact on this issue, nor did he make any effort to do so. As stated previously in this order, the court must

grant substantial deference to the Nebraska Court of Appeals' findings of fact and conclusions of law. The Nebraska Court of Appeals reviewed all the evidence and determined, based on *Strickland*, that trial counsel was not deficient for failing to ask the court to direct Lopez-Bravo to answer the question or request sanctions upon the witness for refusing to answer the question or for ceasing his cross-examination after Lopez-Bravo's Fifth Amendment invocation. Bates did not argue, much less establish, that the Nebraska Court of Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

More to the point here, Bates was not prejudiced by his appellate counsel's failure to raise the argument on direct appeal. The Nebraska Court of Appeals considered and rejected the argument in the postconviction action. There is nothing to suggest the result would have been different if the argument had been raised on direct appeal instead. Accordingly, Bates is not entitled to relief based on Claim Three, subpart (3), of the petition.

### 4. False Testimony of Callahan and Lopez-Bravo

Bates argues that appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel was ineffective for failing to object to, move to strike testimony, move for curative instruction, move to dismiss charges, and preserve for appellate review the violation of due process when the prosecutor knowingly presented false testimony of Callahan and Lopez-Bravo.

The Nebraska Court of Appeals considered and rejected this argument in its order affirming the state district court's denial of postconviction relief. The court wrote:

> In his fourth claim, Bates contends that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective for failing to object, move to strike, move for curative instruction, move to dismiss the charges, and preserve for appeal the prosecutor's use of the knowingly false testimony of Callahan and Lopez-Bravo. In support of this claim, Bates points to inconsistencies in the testimonies of the two witnesses. These inconsistencies do not support Bates' conclusory allegation that the prosecutor knew Callahan and Lopez-Bravo were offering false testimony or that trial counsel was aware that the prosecutor had such knowledge. As noted above, the entire testimonies of Callahan and Lopez-Bravo were not fabrications; Bates' own testimony at trial supported much of what the other two witnesses detailed, including his admission to punching Lopez-Bravo and breaking the window of his car. Thus, any suggestion that the witnesses['] testimonies should have been stricken from the record is unsupported by the evidence. As the district court found, this claim is based on pure speculation and conclusory allegations, which are insufficient to support a claim for postconviction relief. Accordingly, this claim has no merit.

(Filing No. 11-2 at CM/ECF p. 7.)[2]

---

[2] To the extent the Nebraska Court of Appeals rejected this claim because Bates made insufficient allegations in his postconviction motion, the decision was based on an independent and adequate state procedural rule. See Hunt, 563 F.3d at 703 ("Federal courts generally will not review claims that a state court has refused to consider because of the petitioner's failure to satisfy a state procedural requirement"); Ildefonso v. Gage, No. 4:13CV3110, 2016 WL 1092468, at *9 (D. Neb. Mar. 21, 2016), certificate of appealability denied (Sept. 15, 2016) (the Nebraska Supreme Court's decision to refuse to consider claims that alleged only conclusions of fact or law was based on a firmly established state procedural rule; in Nebraska, if a postconviction motion alleges only conclusions of fact or law, then the court is not required to grant an evidentiary hearing); State v. Dragon, 287 Neb. 519, 523, 843 N.W.2d 618, 623 (2014) ("If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing"). The claim then would be procedurally defaulted because Bates cannot raise it in a successive postconviction motion.

Bates did not rebut the Nebraska Court of Appeals' findings of fact on this issue, nor did he make any effort to do so. As stated previously in this order, the court must grant substantial deference to the Nebraska Court of Appeals' findings of fact and conclusions of law. The Nebraska Court of Appeals reviewed all the evidence and determined, based on *Strickland*, that trial counsel was not ineffective for failing to challenge the testimonies of Callahan and Lopez-Bravo as false. Bates did not argue, much less establish, that the Nebraska Court of Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

More to the point here, Bates was not prejudiced by his appellate counsel's failure to raise the argument on direct appeal. The Nebraska Court of Appeals considered and rejected the argument in the postconviction action. There is nothing to suggest the result would have been different if the argument had been raised on direct appeal instead. Accordingly, Bates is not entitled to relief based on Claim Three, subpart (4), of the petition.

### 5. Callahan's Drug Use

Bates argues that appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel was ineffective for failing to discuss with Bates and present a defense that witness Callahan suffered drug-induced hallucinations and perceptual distortions and for failing to consult with or call an expert witness to describe the effects of drug interactions.

The Nebraska Court of Appeals considered and rejected this argument in its order affirming the state district court's denial of postconviction relief. The court wrote:

> Bates alleges that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective for failing to discuss with him and present a defense at trial that Callahan suffered drug induced hallucinations and perceptual distortions and failing to consult or call an expert witness to describe the effects of drug interactions. He claims that trial counsel should have investigated Callahan's mental health and drug use, discussed the matter with Bates, and "presented the defense that the entire testimony of witness Callahan was a complete hallucination and inherently unreliable."
>
> Similar to the previous claim, this claim is based on pure speculation. Bates alleges that "upon information and belief," Callahan has exhibited signs and/or been diagnosed with mental illness, admitted to using various drugs and prescription medications in combination, and was under the influence of said drugs and medications at the time of the crimes.
>
> We first note that the district court granted the State's pretrial motion in limine prohibiting Bates from inquiring into Callahan's prior use of drugs at trial. Thus, trial counsel's cross-examination as to such matters at trial would have been inappropriate. Additionally, as we concluded above, Callahan's entire testimony was not a "complete hallucination." Photographs depict the injuries she sustained, and Bates' testimony mirrors much of Callahan's including the fact that she went to his parents' farm in order to have lunch with him, they argued in her car, she sent Lopez-Bravo a text message from Bates' cell phone asking for a ride, and after Lopez-Bravo arrived at the scene, he and Bates got into a physical altercation. Bates denied assaulting Callahan and claimed that he assaulted Lopez-Bravo in defense of Callahan, but certainly the entirety of Callahan's testimony was not false. Based on the foregoing, we conclude that appellate counsel was not ineffective in failing to raise this claim on direct appeal.

(Filing No. 11-2 at CM/ECF p. 8.)

Bates did not rebut the Nebraska Court of Appeals' findings of fact on this issue, nor did he make any effort to do so. As stated previously in this order, the court must grant substantial deference to the Nebraska Court of Appeals' findings of fact and conclusions of law. The Nebraska Court of Appeals reviewed all the evidence and

determined, based on *Strickland*, that trial counsel was not ineffective for failing to present a defense that witness Callahan suffered drug-induced hallucinations and perceptual distortions and for failing to consult with or call an expert witness to describe the effects of drug interactions. Bates did not argue, much less establish, that the Nebraska Court of Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

More to the point here, Bates was not prejudiced by his appellate counsel's failure to raise the argument on direct appeal. The Nebraska Court of Appeals considered and rejected the argument in the postconviction action. There is nothing to suggest the result would have been different if the argument had been raised on direct appeal instead. Accordingly, Bates is not entitled to relief based on Claim Three, subpart (5), of the petition.

### 6. Jury Instructions

Last, Bates argues that appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel was ineffective for failing to object to the form of the jury instructions and request a jury instruction which specifically instructed the jury that intent is a material element of assault in the second degree and third degree domestic assault.

In its order affirming the state district court's denial of postconviction relief, the Nebraska Court of Appeals considered the intent instruction in the context of second degree assault. The court did not specifically address the intent instruction with respect to third degree domestic assault; instead, it construed the claim in the context of third degree assault as part of the step-instruction for second degree assault. The court wrote:

In his final claim, Bates asserts that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective for failing to object to the form of the jury instructions and request an instruction which specifically instructed the jury that intent is a material element of second degree assault and third degree assault, listed under sections C and D within jury instruction No. 3.

Here, the jury was given a step instruction with respect to the assault charges. It was first instructed to consider the elements of second degree assault. If the jury found that the State proved each element of second degree assault beyond a reasonable doubt, it was instructed that it must find Bates guilty of second degree assault. Only if the jury determined that the State did not prove all of the elements of second degree assault was it then permitted to consider whether the State proved all of the elements of third degree assault.

The jury instructions provided that the elements of second degree assault were that Bates caused bodily injury to Lopez-Bravo, that he did so with a dangerous instrument, that he did so knowingly or intentionally, and that Bates did so on or about February 8, 2014, in Dawson County, Nebraska. The jury was also required to determine that Bates did not act in defense of Callahan as set out in a separate jury instruction. A separate instruction provided:

> "Intentionally" means willfully or purposely and not accidentally or involuntarily. The intent involved in conduct is a mental process and may be inferred from the conduct itself, the actor's language in reference to the conduct, and the circumstances surrounding the incident. When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence.

In his postconviction motion, Bates argues that trial counsel was ineffective in failing to request that the jury be instructed that intent is a material element of second and third degree assault, and in deciding whether the defendant acted with intent, the jury should consider his words and acts and all surrounding circumstances. We first observe that the elements of second degree assault set out in the jury instructions follow Neb. Rev. Stat. § 28-309 (Reissue 2016). A jury instruction is sufficient if it uses the language of the statute. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016). Thus, no separate intent instruction was required when the requisite intent required to convict Bates of second degree assault was included in the

elements of the crime. We need not address any instruction with respect to third degree assault because the jury did not reach that issue.

In addition, the jury instruction given was essentially the same as what Bates is now requesting. The jury was informed that it could consider Bates' words and actions as well as other circumstances in determining his intent. We also observe that whether Bates had the requisite intent in this case was essentially undisputed. In other words, he was not arguing that he accidentally or involuntarily punched Lopez-Bravo. Rather, Bates' defense was that his actions were justified because he assaulted Lopez-Bravo in order to defend Callahan. Thus, the main question for the jury was the final element of second degree assault: whether Bates acted in defense of another.

Under this claim, Bates also argues that trial counsel's performance was deficient because he failed to object to an error in jury instruction No. 3. Jury instruction No. 3 encompassed the elements of all six crimes with which Bates had been charged. After listing the elements of two of the offenses, false imprisonment and strangulation which were listed under sections A and B, the instruction provided, "If you have considered all six crimes and reached and recorded a verdict as to each crime, stop your deliberations and notify the bailiff or Clerk." Bates' motion claims that the jury's confusion was reflected by its returning to the court with an incomplete verdict form.

The record reflects that the jury initially returned the forms to the court and had completed both the forms for second degree assault and third degree assault. Thus, the court asked the jury to return to the jury room to ensure the forms accurately reflected the verdicts. Obviously the jury's confusion did not stem from the error included after the instructions for false imprisonment and strangulation because at that point, the jury had not yet considered the assault charges. In any event, we cannot find that Bates was prejudiced by the typographical error in jury instruction No. 3 because the jury ultimately considered all six crimes, convicting him of three offenses and acquitting him of the remaining three offenses. Thus, it cannot be said that the jury did not consider all parts of jury instruction No. 3. As a result, appellate counsel was not ineffective for failing to raise this claim on direct appeal.

(Filing No. 11-2 at CM/ECF pp. 8-9.)

The state district court addressed the intent instruction specifically with respect to third degree domestic assault in its order denying postconviction relief. The court wrote:

In his sixth claim Bates asserted his trial counsel was ineffective for failing to object to the form of the jury instructions and request jury instructions which specifically instructed the jury that intent was a material element of assault in the second degree and third degree domestic assault. This claim is without merit because it is factually wrong.

In the instruction given to the jury for assault in the second degree, the instruction stated the elements the state must prove by evidence beyond a reasonable doubt, included that the defendant acted "knowingly or intentionally." Likewise, in the description of the elements for third degree domestic assault, the jury was instructed the state was required to prove by evidence beyond a reasonable doubt that Bates acted "knowingly and intentionally." In Instruction No. 5, the court defined the words intent, intentionally, and knowingly. Thus, Bates claim of ineffective assistance of counsel with respect to the jury instructions is factually wrong and without merit.

(Filing No. 11-13 at CM/ECF p. 52 (footnote omitted).) Accordingly, the state district court found Bates' corresponding ineffective assistance of appellate counsel claim without merit. (*Id.* at CM/ECF p. 54.)

Bates did not rebut the state courts' findings of fact on this issue, nor did he make any effort to do so. The state courts' findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. *See* Federal Habeas Manual § 3:21 ("The deference afforded by § 2254(d)(1) is not limited to adjudications by the state's highest court, but includes adjudications by state intermediate appellate and trial courts." (citing cases)); Federal Habeas Manual § 3:25 ("And where successive state court decisions decided separate issues, such as the separate prongs of a *Strickland* inquiry, each individual state court decisions constitutes a merits adjudication entitled to § 2254(d) deference." (citing cases)). The Nebraska state courts reviewed the record and determined, based on *Strickland*, that trial counsel was not ineffective for failing to object

to the form of the jury instructions and request a jury instruction which specifically instructed the jury that intent is a material element of assault in the second degree and third degree domestic assault. Bates has not argued, much less established, that the state courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or that the state courts reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

More to the point here, Bates was not prejudiced by his appellate counsel's failure to raise the argument on direct appeal. The Nebraska Court of Appeals considered and rejected the argument in the postconviction action. There is nothing to suggest the result would have been different if the argument had been raised on direct appeal instead. Accordingly, Bates is not entitled to relief based on Claim Three, subpart (6), of the petition.

**D. Additional Claim**

In his response brief, Bates argues that trial counsel was ineffective for failing to move to strike Lopez-Bravo's testimony after he invoked his Fifth Amendment privilege against self-incrimination in front of the jury. (Filing No. 21 at CM/ECF p. 13.) Although Bates raised this argument on direct appeal and in his petition for further review with the Nebraska Supreme Court (filing no. 11-7 at CM/ECF pp. 6-7), he did not raise it as a claim in his habeas petition. In any event, the claim is without merit.

After setting forth the *Strickland* standard, the Nebraska Court of Appeals rejected Bates' assertion that he received ineffective assistance of trial counsel when counsel failed to move to strike Lopez-Bravo's testimony. The court wrote:

> Bates contends that his trial counsel's performance was deficient because he failed to move for an order striking Lopez-Bravo's testimony after his invocation of the Fifth Amendment in front of the jury. Citing *U.S. v. Wilmore*, 381 F.3d 868 (9th Cir. 2004), Bates claims that when a government witness invokes the Fifth Amendment, the trial court should strike the witness' direct testimony unless the refusal to testify concerns collateral matters. Brief for appellant at 12. Striking the witness' testimony is the remedy for when the invocation of the Fifth Amendment violates the defendant's Sixth Amendment rights to confront and cross-examine the witnesses against him.
>
> Having determined above that Bates' Sixth Amendment rights to confront and cross-examine Lopez-Bravo were not violated, counsel was not ineffective in failing to move to strike the testimony. We therefore find no merit to Bates' claim that he received ineffective assistance of counsel.

(Filing No. 11-1 at CM/ECF p. 5.)

As stated previously in this order, the court must grant substantial deference to the Nebraska Court of Appeals' findings of fact and conclusions of law. The Nebraska Court of Appeals determined, based on *Strickland*, that trial counsel was not ineffective for failing to move to strike Lopez-Bravo's testimony because Bates' Sixth Amendment right to confront and cross-examine Lopez-Bravo was not violated. Bates did not argue, much less establish, that the Nebraska Court of Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The court has applied the appropriate standard and determined that Bates is not entitled to a certificate of appealability.

IT IS THERFORE ORDERED that the habeas corpus petition (filing no. 1) is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

Dated this 2nd day of July, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge